IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL R. SIEGEL, on behalf of himself
and all others similarly situated,

       Plaintiff,

v.

INOME INC. d/b/a INTELIUS, INC., on
behalf of itself and all other entities similarly
situated,

       Defendants.

No. 16-cv-10856

Judge: Samuel Der-Yeghiayan

Magistrate:  Judge M. David Weisman

## DEFENDANT INTELIUS, INC.'S MEMORANDUM IN SUPPORT OF RULE 12(B)(1), 12(B)(2) AND 12(B)(6) MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

**Page**

I.     Introduction ................................................................................................................ 1

II.    Allegations ................................................................................................................. 2

III.   Dismissal standards .................................................................................................. 5

IV.   Argument .................................................................................................................. 6

       A.     Siegel has failed to properly plead and cannot make a *prima facie* showing of personal jurisdiction. ........................................................................... 6

       B.     The First Amendment bars liability for the facts and circumstances as alleged. .............................................................................................................. 11

       C.     Intelius's conduct as alleged is exempt from liability under IRPA. ................... 14

       D.     CDA Section 230 bars recovery based on the allegations. ................................. 16

       E.     Siegel has failed to plead standing under Article III of the U.S. Constitution. .......................................................................................................... 18

       F.     Because the IRPA claim fails as a matter of law, the unjust enrichment claim fails as a matter of law. ........................................................................... 20

       G.     There is no separate cause of action for injunctive relief. .................................. 21

       H.     If Intelius prevails on this motion, the Court should award Intelius its fees. ...... 21

V.    Conclusion ................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ..........................................................................6, 7, 8

*Appert v. Morgan Stanley Dean Witter, Inc.*,
  673 F.3d 609 (7th Cir. 2012) ..................................................................................6

*AS Engine Leasing, LLC v. Vision Airlines, Inc.*,
  2014 U.S. Dist. LEXIS 161518 (N.D. Ill. Nov. 18, 2014).....................................10

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
  480 U.S. 102 (1987)................................................................................................10

*Backpage.com, LLC v. Dart*,
  807 F.3d 229 (7th Cir. 2015) .................................................................................16

*Best v. Berard*,
  776 F. Supp. 2d 752 (N.D. Ill. 2011) .....................................................................15

*Bittman v. Fox*,
  2016 U.S. Dist. LEXIS 63948 (N.D. Ill. May 16, 2016).................................6, 8, 9

*Bogie v. Rosenberg*,
  705 F.3d 603 (7th Cir. 2013) ...................................................................................3

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)................................................................................................10

*Buzinski v. DoAll Co.*,
  31 Ill. App. 2d 191 (Ill. App. 1st 1961) .................................................................15

*Citadel Group Ltd. v. Washington Reg. Med. Center*,
  692 F.3d 580 (7th Cir. 2012) ...................................................................................3

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
  149 F.3d 679 (7th Cir. 1998) .................................................................................12

*Cook Assocs. v. E.G. Snyder Co.*,
  1988 U.S. Dist. LEXIS 14518 (N.D. Ill. Dec. 21, 1988).........................................5

*Cox Broadcasting Corp. v. Cohn*,
  420 U.S. 469 (1975)................................................................................................13

*Daimler AG v. Bauman*,
  134 S.Ct. 746 (2014) ................................................................................6, 7

*Dart v. Craigslist, Inc.*,
  665 F. Supp. 2d 961 (N.D. Ill. 2009) ...................................................16

*Doctor's Data, Inc. v. Barrett*,
  2011 U.S. Dist. LEXIS 134921 (N.D. Ill. Nov. 22, 2011)......................21

*E.E.O.C. v. Concentra Health Serv., Inc.*,
  496 F.3d 773 (7th Cir. 2007) .................................................................5

*Eick v. Perk Dog Food Co.*,
  347 Ill. App. 293 (Ill. App. 1st 1952) ...................................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011).................................................................................8

*Groshek v. Great Lakes Higher Educ. Corp.*,
  2016 U.S. Dist. LEXIS 144867 (W.D. Wisc. Oct. 19, 2016) ..................19

*Groshek v. Time Warner Cable, Inc.*,
  2016 U.S. Dist. LEXIS 104952 (E.D. Wisc. Aug. 9, 2016) ....................19

*Gullen v. Facebook.com, Inc.*,
  2016 U.S. Dist. LEXIS 6958 (N.D. Ill. Jan. 21, 2016) ................6, 7, 8, 9

*Gunther v. DSW Inc.*,
  2016 U.S. Dist. LEXIS 152674 (E.D. Wisc. Nov. 3, 2016) ....................19

*Hadley v. Gatehouse Media Freeport Holdings, Inc.*,
  2012 U.S. Dist. LEXIS 98674 (N.D. Ill. July 10, 2012)........................16

*Hall v. Tune Up Corp.*,
  2013 U.S. Dist. LEXIS 109935 (N.D. Ill. Aug. 6, 2013) (Der-Yeghiayan, J.)......................20

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).................................................................................8

*Kipp v. SKI Enter. Corp.*,
  783 F.3d 695 (7th Cir. 2015) .................................................................7

*Kirby v. Sega of America, Inc.*,
  144 Cal. App. 4th 47 (Call. App. 2d Dist. 2006) ..................................21

*Klump v. Duffus*,
  71 F.3d 1368 (7th Cir. 1995) .................................................................7

*Love v. Mail on Sunday*,
 2007 U.S. Dist. LEXIS 97061 (C.D. Cal. Sept. 7, 2007)........................................................21

*Meyers v. Nicolet Rest. of De Pere, LLC*,
 2016 U.S. App. LEXIS 22139 (7th Cir. Dec. 13, 2016)....................................................18, 19

*Mi-Jack Sys. & Tech., LLC v. Babaco Alarm Sys.*,
 2013 U.S. Dist. LEXIS 165295 (N.D. Ill. Nov. 20, 2013)........................................................5

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964)................................................................................................................12

*Nieman v. Versuslaw, Inc.*,
 512 F. App'x 635 (7th Cir. 2013) ......................................................................................13, 16

*Obado v. Magedson*,
 2014 U.S. Dist. LEXIS 104575 (D.N.J. 2014) .......................................................................17

*Oklahoma Publishing Co. v. District Court*,
 430 U.S. 308 (1977)................................................................................................................13

*Perfect 10, Inc. v. CC Bill LLC*,
 488 F.3d 751 (9th Cir. 2007) ..................................................................................................17

*RAR, Inc. v. Turner Diesel, Ltd.*,
 107 F.3d 1272 (7th Cir. 1997) ..................................................................................................5

*Silha v. ACT, Inc.*,
 807 F.3d 169 (7th Cir. 2015) .....................................................................................................6

*Solo Cup Co. v. First Southwest Vending & Food Serv.*,
 2008 U.S. Dist. LEXIS 54625 (N.D. Ill. July 17, 2008)..........................................................10

*Spokeo, Inc. v. Robin*s,
 136 S. Ct. 1540 (2016)........................................................................................................18, 19

*Steel Warehouse of Wisconsin, Inc. v. Leach*,
 154 F.3d 712 (7th Cir. 1998) ....................................................................................................5

*Tamburo v. Dworkin*,
 601 F.3d 693 (7th Cir. 2010) ...........................................................................................5, 8, 9

*Toney v. L'Oreal USA, Inc.*,
 406 F.3d 905 (7th Cir. 2005) ..................................................................................................14

*Trudeau v. Lanoue*,
 2006 U.S. Dist. LEXIS 7956 (N.D. Ill. March 2, 2006)....................................................14, 15

*Vrdolyak v. Avvo, Inc.*,
  2016 U.S. Dist. LEXIS 123578 (N.D. Ill. Sept. 12, 2016) .................................................11, 12

*Walden v. Fiore*,
  134 S.Ct. 1115 (2014) .........................................................................................................7, 8

*Zglobicki v. Travel Channel, LLC, et al.*,
  2012 WL 725570 (N.D. Ill. Feb. 2, 2012) ...........................................................................15

**Statutes**

Communications Decency Act, Section 230, 47 U.S.C. § 230............................................ *passim*

Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ................................................8

Illinois Right of Publicity Act, 765 ILCS 1, *et seq* ............................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)...........................................................................................................6, 18

Fed. R. Civ. P. 12(b)(2)...........................................................................................................1, 5

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 5

## I.      Introduction

Plaintiff Michael R. Siegel has sued defendant Intelius, Inc.,[1] because Intelius allegedly sells access to publicly available information about Siegel.  Siegel does not allege that Intelius used data about him (what he characterizes as his "name and likeness") to sell something else (such as coffee mugs, T-shirts, or vacation packages).  Rather, Siegel alleges that the "product or service sold" is the data itself.  No court nationwide has found in any published decision that the sale of such data violates any common law or statutory right of publicity.  Extremely sound First Amendment principles support that reality, which Siegel should not be allowed to alter now.

But before the Court reaches the merits, the question of personal jurisdiction should be addressed (and it can and should be resolved on the pleadings without any discovery).  Siegel has not properly pled, and cannot make a *prima facie* showing of, personal jurisdiction over Intelius in Illinois.  Accordingly, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2).  If, however, the Court does not dismiss under Rule 12(b)(2) without discovery, Intelius requests that the Court dismiss because (1) the First Amendment bars Siegel's claim; (2) Siegel has failed to state a claim under the Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.* ("IRPA"); (3) Siegel's claim fails under Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("CDA"); (4) Siegel has failed to plead standing under Article III of the U.S. Constitution; (5) without an IRPA claim, there can be no unjust enrichment claim; and (6) there is no separate cause of action for injunctive relief.  Finally, if Intelius prevails on this motion, the Court should award Intelius recovery of its attorneys' fees for defending against this action.

---

[1]  Inome, Inc., is the former corporate name of Intelius, Inc., and ceased being used in 2015. Defendant was known as Intelius, Inc. until January 1, 2017, at which time its corporate name formally changed to PeopleConnect, Inc.  Defendant refers to itself as "Intelius" in this brief to be consistent with prior filings and because the Intelius branding still exists on its Web site, which is relevant to this Motion.

## II.     Allegations

According to Siegel, "Intelius is a 'leading provider of **public data** about people and their connections to others.'"    Complaint, Docket Entry 1-A ("Compl."), at ¶ 1 (quoting https://www.Intelius.com) (emphasis added).   Based on that provision of public data, Siegel purports to bring a putative class action against Intelius for alleged misappropriation of identity in violation of IRPA.  *Id.*

Siegel alleges that Web searches of people's names return advertisements for companies such as Intelius, which offer via the Web public information about individuals such as location, age, address history, date of birth, phone number, income, relatives, criminal record, history of bankruptcies, judgments, lawsuits, sex offender status, known social networks, alias information, email addresses, liens, marriages, divorces, and professional characteristics.  *Id.* at ¶¶ 3, 10, 12, 13, 14, 20.  At various points in the Complaint, Siegel refers to "products and services" sold by Intelius, *see, e.g.*, Compl. at ¶¶ 21, 23, 24, but the only "products and services" Siegel identifies are access to publicly available information.  *See, e.g., id.* at ¶¶ 3, 10, 12-14, 20.  Siegel alleges that Intelius is "an **online directory**."  *Id.* ¶ 9 (citing http://corp.Intelius.com) (emphasis added). Siegel equates the sale of publicly available data without permission from the data subject to misappropriating "name and likeness" under IRPA.  *See, e.g., id.* at ¶¶ 4, 16, 18-22, 30-40.  He also asserts that the alleged IRPA violations amount to unjust enrichment.  *Id.* at ¶¶ 41-44.

Siegel sets forth the Intelius user experience without saying whether he engaged in the acts set forth in the Complaint.  In passive voice, the Complaint alleges that "[a] Google search using the parameters 'Michael R. Siegel Illinois information' prompts a list that includes 'Michael R. Siegel in Lake Forest Illinois | Intelius."  Compl. at ¶ 11.  The Complaint does not specify whether Siegel, his counsel, or someone else performed this search, when the search was

performed, or from whose computer the resulting screen shot was copied. *Id.* In further passive voice, the Complaint alleges that "[o]nce the link is clicked, Intelius' website provides a listing of each 'Michael Siegel' in Illinois." *Id.* at ¶ 12. Passive voice continues with "when Plaintiff's profile was selected," information about Siegel was offered. *Id.* at ¶ 13, 14. The Complaint does not say to whom that information was provided (Siegel, his counsel, or someone else), when that information was provided, or from whose computer the sample screenshots were copied. *Id.* The Complaint then alleges that all of the information for Siegel that is set forth in the Complaint was "offered for a per-transaction or subscription based fee." *Id.* at ¶ 15. But the Complaint does not say to whom the information was offered, when it was offered, or whether the person to whom it was offered actually paid any fees or registered with Intelius. *Id.*

The Complaint contains numerous undated references to and screenshots from the Intelius Web site. Compl. at ¶¶ 1 n.1, 4 n.2, 9 n.3, 11, 13, 14, 17. Intelius' Terms & Conditions are posted to the Intelius Web site.[2] According to those Terms & Conditions:

> You agree that your use of the Intelius Databases is governed by the following terms and conditions: . . . **12. Waiver of Class Action and Jury Trial and Consent to Binding Arbitration. In any legal proceeding relating to your use of the Intelius databases, you agree to waive any right you may have to participate in any class, group, or representative proceeding and to waive any right you may have to a trial by jury.** Any claim, controversy, or dispute that arises under or relates to your use of the Intelius databases shall be referred by the aggrieved party to binding arbitration under the **Commercial Rules of the American Arbitration Association**.

---

[2] A true and correct copy of the current Terms and Conditions available at https://www.intelius.com/useragreement.php is attached as **Exhibit A** (last visited January 12, 2017). Because the Complaint extensively refers to the Intelius Web site and the Web site itself is the entire basis for Siegel's claims, the Court may consider the Web site in ruling on a motion to dismiss. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (holding that courts may consider "documents referenced in the pleading if they are central to the claim"); *Citadel Group Ltd. v. Washington Reg. Med. Center*, 692 F.3d 580, 591 (7th Cir. 2012) ("In deciding a motion to dismiss for failure to state a claim we may consider documents attached to or referenced in the pleading if they are central to the claim.").

Exh. A, ¶ 12 (emphasis in original). The Terms & Conditions further provide that "[t]his Agreement shall be governed by Washington law." Exh. A, ¶ 13.

The Intelius Web site referred to in the Complaint says that "Intelius has access to many of the world's most extensive databases and public record repositories. Our robust technology enables us to gather billions of public records annually from a multitude of government and professional entities and assign them to more than 225 million unique people." *See* "How We Do It," http://corp.intelius.com/, attached as **Exhibit B** (last visited January 12, 2017).

Siegel asserts the following Plaintiff Class:

All Illinois residents whereby Intelius made public use of, or held out their identity in connection with the sale, advertising or promotion of Intelius products and services from 2011 to the date of judgment herein.

Excluded from the Class are: 1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and these entities' current and former employees, offers [sic] and directors; 2) the Judge to whom this case is assigned and his or her immediate family; 3) any Illinois resident who agreed to Intelius' Terms and Conditions; 4) any persons who have had their claims in this matter adjudicated or otherwise released; 5) the legal representatives, successors and assigns of such person [sic].

Compl. at ¶ 23.

Siegel asserts the following Defendant Class:

All entities in Illinois who made public use of, or held out the identity of any Illinois resident in connection with the sale, advertising or promotion of said entities' products and service from 2011 to the date of judgment herein.

Compl. at ¶ 24.

Siegel's personal jurisdiction allegation against Intelius is limited to the following conclusory and redundant assertion:

. . . it is a corporation doing business within the State of Illinois. Intelius markets, sells, and collects money from Illinois residents for its personal reports and separate advertising agreements. Intelius uses the names and likenesses of

Illinois residents to sell personal reports containing personal information to other Illinois residents who pay Intelius for said reports. Intelius also uses the names and likenesses of Illinois residents with selected unknown third party service providers for marketing purposes related to Intelius' products and services. Intelius' availment to Illinois contacts is such that it would not be unfair or unexpected to subject Defendant to suit within this Court pursuant to 735 ILCS 5/2-209(a)(1), (a)(2) and (b)(4).

*Id.* at ¶ 7.

## III. Dismissal standards

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *See, e.g., Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). If in the face of a Rule 12(b)(2) challenge a plaintiff cannot establish a *prima facie* case of personal jurisdiction, then the court may dismiss the case for lack of personal jurisdiction based solely on written materials submitted to the court. *See, e.g., Mi-Jack Sys. & Tech., LLC v. Babaco Alarm Sys.,* 2013 U.S. Dist. LEXIS 165295, *4 (N.D. Ill. Nov. 20, 2013) (dismissing case for lack of personal jurisdiction without evidentiary hearing). Conclusory allegations of personal jurisdiction are insufficient to withstand a challenge. *See, e.g., Cook Assocs. v. E.G. Snyder Co*., 1988 U.S. Dist. LEXIS 14518, *3 (N.D. Ill. Dec. 21, 1988); *see also Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6), the court, while construing the allegations in the light most favorable to the plaintiff, should not accept conclusory allegations and should assess whether the complaint plausibly suggests that the plaintiff has a right to relief, raising the possibility above a speculative level. *See, e.g., E.E.O.C. v. Concentra Health Serv., Inc*., 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, the complaint must

contain factual matter that, if true, allows the court to draw a reasonable inference that the defendant is liable for the conduct alleged. *See, e.g., Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The same "plausibility" standard applies to arguments under Fed. R. Civ. P. 12(b)(1) when, as here, a defendant asserts a facial challenge based on the plaintiff's failure to sufficiently plead subject matter jurisdiction. *See Silha v. ACT, Inc.,* 807 F.3d 169, 173-74 (7th Cir. 2015).

## IV.    Argument

### A.    Siegel has failed to properly plead and cannot make a *prima facie* showing of personal jurisdiction.

Siegel alleges that because Intelius markets to, sells to, and collects money from Illinois residents via the Intelius Web site and sells "names and likeness" of Illinois residents via the Web site, Intelius is subject to personal jurisdiction in Illinois. Compl. at ¶ 7. But both the Seventh Circuit and the U.S. Northern District of Illinois have rejected such an expansive notion of Internet jurisdiction. *See, e.g., Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014); *Bittman v. Fox*, 2016 U.S. Dist. LEXIS 63948 (N.D. Ill. May 16, 2016); *Gullen v. Facebook.com, Inc.*, 2016 U.S. Dist. LEXIS 6958 (N.D. Ill. Jan. 21, 2016). This Court should do the same.

There are two types of jurisdiction: general and specific. *See, e.g., Advanced Tactical*, 751 F.3d at 800 (relying on *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014)). Siegel does not specify which he is asserting, although he cites Illinois long-arm statute sections referring to transaction of business and commission of a tort in Illinois. Compl. at ¶ 7 (citing 735 ILCS 5/2-209(a)(1), (2), and (b)(4)). But that citation does not specify whether Siegel believes Intelius has transacted business and/or committed torts in Illinois in such a way as to subject it to general or specific jurisdiction. *Id.* Regardless, the Illinois long-arm statute is coextensive with the federal

constitutional due process considerations, thus the Court need only concern itself with a federal constitutional analysis. *See Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (holding that the Illinois statute is coextensive with federal due process and thus "if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the United States Constitution have been met, and no other inquiry is necessary").

General jurisdiction requires that a defendant essentially be "at home" in the forum state and is extremely difficult to show for any state that is not a principal place of business or state of incorporation. *See, e.g., Advanced Tactical*, 751 F.3d at 800; *see also Kipp v. SKI Enter. Corp.*, 783 F.3d 695, 698 (7th Cir. 2015) (reasoning that under the *Daimler* standard, a corporate defendant is generally subject to general jurisdiction only in "the state of [its] principal place of business and the state of its incorporation"). As alleged by Siegel, Intelius is a Washington-based company registered in Delaware. Compl. at ¶ 6. As such, Intelius is not subject to general jurisdiction in Illinois, and Siegel has not pled anything to the contrary.

Specific jurisdiction focuses on the relations among the defendant, the forum, and the litigation. *See, e.g., Advanced Tactical*, 751 F.3d at 801. An alleged effect on a plaintiff in the forum does not support the exercise of jurisdiction over a defendant. *Id.* The relationship between the defendant and the forum must arise out of contacts that the defendant itself creates with the forum. *Id.* Contacts between the plaintiff or third parties and the forum do not create personal jurisdiction over a defendant. *Id.* (citing *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014)). Specific jurisdiction focuses on (1) intentional conduct by defendant, (2) expressly aimed at the forum state, (3) with the defendant's knowledge that the effects would be felt (in

other words, that the plaintiff would be injured) in the forum state. *Gullen*, 2016 U.S. Dist. LEXIS 6958 at *7 (citing *Tamburo*, 601 F.3d at 703).

In *Advanced Tactical*, the plaintiff argued that the defendant paintball manufacturer was subject to personal jurisdiction in Indiana because the defendant fulfilled several orders for the allegedly trademark-infringing projectiles in Indiana; it knew that the plaintiff competitor was an Indiana company and could foresee that misleading emails and sales could harm the plaintiff in Indiana; it sent two misleading email blasts to a list that included Indiana residents; it had an interactive Web site available to Indiana residents; and it put Indiana consumers on its email list when they made a purchase. 751 F.3d at 801. The Seventh Circuit found that these contacts were not sufficient to establish specific personal jurisdiction over the defendant in Indiana. *Id.* The court found that if these contacts were to give rise to jurisdiction, then companies such as the defendant would be subject to *de facto* universal jurisdiction in contravention of U.S. Supreme Court precedent. *Id.* at 801 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Walden*, 134 S.Ct. at 1115; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)).

As to the defendant's online activities, the Seventh Circuit found that neither outbound emails to Indiana consumers nor the interactivity of the Web site justified the exercise of specific personal jurisdiction. *Advanced Tactical*, 751 F.3d at 802-03. Both were so geographically indifferent and omnipresent that the court found them to be poor proxies for intentional targeting of contacts with the state by the defendant. *Id.* at 803.

To similar effect are the Northern District of Illinois decisions in *Gullen v. Facebook* and *Bittman v. Fox*. In *Gullen*, a case that is particularly instructive here, the plaintiff alleged that Facebook obtained his biometric data from a photo uploaded by a third party in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. *Gullen*, 2016 U.S. Dist.

LEXIS 6958 at *1-2. Even though the complaint alleged that Facebook was registered to do business in Illinois, had a sales and advertising office here, and targeted its facial recognition technology to millions of users in Illinois, the court found that the plaintiff had failed to make a *prima facie* showing of personal jurisdiction and dismissed the suit. *Id*. at *5-6. According to the court, Facebook's doing business in and having an office in Illinois had nothing to do with the unauthorized collection of biometric data from the plaintiff. *Id*. Additionally, facial recognition scanning was not limited to Illinois but was applied across Facebook generally. *Id*. Thus the technology did not target Illinois specifically but targeted the entire Facebook user base generally around the globe.

Such is precisely the case here. Intelius is not alleged to — and in fact does not — sell access to publicly available information about only Illinois residents or to only Illinois residents, and Intelius does not specifically target, or direct contacts at, the state of Illinois in a way that justifies the exercise of personal jurisdiction over Intelius in Illinois. *See also Bittman*, 2016 U.S. Dist. LEXIS at *16, 25 (finding no *prima facie* showing of personal jurisdiction even though the defendant republished and commented on a video concerning an Illinois resident by an Illinois library because watchdog Web site was accessible to anyone, anywhere).

Siegel's personal jurisdiction allegations boil down to vague and conclusory assertions that Intelius does business in Illinois and committed torts in Illinois. Siegel fails to allege (and cannot allege) that Intelius engaged in any (1) intentional conduct, (2) expressly aimed at the forum state, (3) with the Intelius's knowledge that the effects would be felt (in other words, that Siegel would be injured) in the forum state. *Gullen*, 2016 U.S. Dist. LEXIS 6958 at *7 (citing *Tamburo*, 601 F.3d at 703). Rather, Intelius is an online directory accessible anywhere.

Interestingly, Siegel does not even allege a transaction involving him or the sharing of data about him via an actual sale. *See generally* Compl. Nor does he allege that he himself interacted with the Intelius Web site. *Id.* If Siegel did interact with the Intelius Web site, his claim is subject to arbitration under Washington law, *supra* pp. 3-4, further buttressing the fact that Illinois lacks jurisdiction over Intelius in this matter. Furthermore, Intelius' adoption of Washington law in its Terms & Conditions helps to demonstrate that Intelius did not intend to subject itself to jurisdiction in Illinois. *See Solo Cup Co. v. First Southwest Vending & Food Serv.,* 2008 U.S. Dist. LEXIS 54625, *19-20 (N.D. Ill. July 17, 2008) ("While alone insufficient to confer jurisdiction, the choice of law provision is a relevant consideration in establishing jurisdiction."); *AS Engine Leasing, LLC v. Vision Airlines, Inc*., 2014 U.S. Dist. LEXIS 161518, *14 (N.D. Ill. Nov. 18, 2014) ("The inclusion of this New York choice of law provision cuts against the notion that [defendant] 'purposefully availed [itself] of the benefits and protections of [Illinois'] laws' and therefore should have foreseen being haled into court in Illinois.").

Even if Siegel had adequately pled sufficient contacts between Intelius and the state of Illinois, Siegel has not made any allegations suggesting that Intelius had "fair warning" that it could be subject to personal jurisdiction in Illinois. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Supreme Court has outlined five non-exclusive factors that should be considered in evaluating the fairness of exercising personal jurisdiction: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering social policies. *Asahi Metal Indus. Co. v. Superior Court of Cal*., 480 U.S. 102, 113 (1987). Application of these factors to the allegations in the Complaint shows it would be unreasonable to exercise personal jurisdiction over Intelius.

Siegel has not pled any facts to suggest that his interest in obtaining relief greatly outweighs the significant burden that would be imposed on an out-of-state company with no contacts in the state of Illinois by litigating this case here.[3]  Similarly, Siegel has not alleged any special interest that the state of Illinois has in this matter.  Rather, the interests of judicial economy and the shared interests of the states would be best served by handling any litigation against Intelius in its home state, where there would be more ready access to evidentiary material and greater oversight by state officials, if appropriate.

This case therefore should be dismissed for lack of personal jurisdiction because Siegel has failed to plead a *prima facie* case for personal jurisdiction.  There are inadequate allegations to find that Intelius has sufficient contacts with the state of Illinois, but even if such contacts existed, exercising personal jurisdiction over Intelius would undermine fair play and substantial justice.

**B.    The First Amendment bars liability for the facts and circumstances as alleged.**

Even if the Court found that Siegel had pled a *prima facie* case of personal jurisdiction, the Court could dispense with this matter without the time and expense of discovery because the First Amendment protects Intelius from liability.  This case is similar to *Vrdolyak v. Avvo, Inc.*, 2016 U.S. Dist. LEXIS 123578 (N.D. Ill. Sept. 12, 2016), in which the court found that the plaintiff's IRPA claim against the Avvo.com attorney directory was barred by the First Amendment.  *Id.* at *9.  Avvo.com creates profile pages for attorneys consisting of information from public records, including name, education, address, phone number, and practice area.  *Id.* at *2.  The directory is a profit-seeking venture, making money through the sale of advertising to

---

[3] This is magnified by the fact that, as set forth at pp. 18-20, *infra*, Siegel has not even pled a concrete or particularized injury.

lawyers. *Id.* at *3. The plaintiff alleged that by placing ads for competing attorneys on his profile page (as well as ads for the defendants' own legal services), the defendant misappropriated the plaintiff's identity for commercial purposes in violation of IRPA. *Id.* at *4. The court disagreed.

Although the court acknowledged that the site did provide advertising as a profit-seeking venture, it nevertheless was protected by the First Amendment from an IRPA claim because the Web site was analogous to a yellow pages directory. *Id.* at *9. The Intelius Web site is similarly analogous, providing publicly available information about individuals in an easily searchable and retrievable format because people searching for this information find it of informational value, or, in other words, newsworthy.

In so holding, the Avvo.com court compared Avvo.com to *Sports Illustrated*, noting that although the magazine contains ads, the articles within it are fully protected non-commercial newsworthy speech, and the use of ads does not convert the articles into less protected commercial speech. *Id.* at *10; *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) ("That the Times was paid for publishing the advertisement is as immaterial in this connection as is the fact that newspapers and books are sold."); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("A speaker's publication does not lose its status as protected speech simply because the speaker advertises the publication."). The court contrasted *Sports Illustrated* with the Jewel grocery store chain's Michael Jordan commemorative ad in *Sports Illustrated*. *Id.* (citing *Jordan v. Jewel Food Stores*, 743 F.3d 509 (7th Cir. 2014)). Whereas the primary purpose of *Sports Illustrated* is to convey newsworthy information about sports, the primary purpose of Jewel in placing the Jordan ad was to sell groceries, according to the court. *Id.* The primary purpose of the Intelius Web site is to

share useful and newsworthy public information about individuals with Web site users. Thus, Intelius.com is like Avvo.com (not like Jewel) and warrants full First Amendment protection for non-commercial speech even though Intelius.com, like Avvo.com and *Sports Illustrated*, is a profit-seeking enterprise. Intelius is not using publicly available data to sell some other product or service. Intelius is using publicly available data to sell publicly available data.

The Avvo.com decision is firmly rooted in U.S. Supreme Court constitutional precedent finding that republication of public information is protected by the First Amendment. *See, e.g., Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 497 (1975) (finding state could not sanction broadcaster for airing name of rape victim obtained from publicly available judicial records); *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 312 (1977) (order restricting release of public information regarding 11-year-old murder defendant violated First Amendment).

Seventh Circuit precedent is to similar effect. In *Nieman v. Versuslaw, Inc*., 512 F. App'x 635, 636 (7th Cir. 2013), the plaintiff sued for invasion of privacy and retaliation against various online search companies, alleging that their publication of documents related to a lawsuit he brought against a former employer had caused him to be passed over by potential employers wary of his litigiousness. The court held that "[t]he First Amendment privileges the publication of facts contained in lawfully obtained judicial records, even if reasonable people would want them concealed." *Id.* at 637. It further held that "[t]he for-profit nature of the defendants' aggregation websites does not change the analysis; speech is protected even when 'carried in a form that is "sold" for profit.'" *Id.* at 638. Because all of the plaintiff's claims were based on the defendants' republication of documents contained in the public record, they fell within and were barred by the First Amendment privilege. *Id.* Similarly, Siegel's IRPA claim fails under the First Amendment and should be dismissed with prejudice.

- 13 -

### C. Intelius's conduct as alleged is exempt from liability under IRPA.

According to IRPA, "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons in Section 20 of this Act . . . or their authorized representative." 765 ILCS 1075/30(a). "Identity" is defined as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." *Id.* at 1075/5. "Commercial purpose" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for the purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.* As relevant here, IRPA does not apply to "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign." *Id.* at 1075/35(b)(2).

Although Siegel alleges misuse of his "identity," the only data point that he's identified under IRPA that clearly would qualify as part of his "identity" is his name. *Id.* at 1075/5. And Intelius is alleged to have used his name simply to identify him, not to promote some other product or service.

Moreover, Intelius is not alleged to be using any publicly available data for a commercial use to sell a product, merchandise, goods, or services, other than access to the data itself. *Id.* The basis of an IRPA claim is apparent endorsement where no consent to the endorsement has been given. S*ee also Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) (reasoning that the basis for an IRPA claim is "whether the plaintiff endorses, or appears to endorse the product in question"); *Trudeau v. Lanoue*, 2006 U.S. Dist. LEXIS 7956, *18 (N.D. Ill. March 2,

2006) ("Defendants artfully displayed Trudeau's name and likeness in their sales mediums to give the false impression to consumers that Trudeau was affiliated with Defendants and that the consumer was in effect buying Defendants' products from Trudeau."); *Eick v. Perk Dog Food Co.*, 347 Ill. App. 293, 295 (Ill. App. 1st 1952) (finding under common law that preceded IRPA that violation existed where dog food company used visually impaired child's photograph to urge public to buy dog food). Siegel has not alleged that Intelius used his identity to create any false impression of endorsement.

And perhaps most importantly, Intelius, as explained above in the First Amendment section of this brief, *supra* pp. 11-13, has a non-commercial purpose to disseminate publicly available data of interest to people seeking it as a matter of public concern. *Id.* at 1075/35(b)(2); *see also Zglobicki v. Travel Channel, LLC, et al.*, 2012 WL 725570, *2 (N.D. Ill. Feb. 2, 2012) (finding that broadcast of plaintiff in episode of *Extreme Fast Foods* was exempt from IRPA liability as matter of public concern); *Best v. Berard*, 776 F. Supp. 2d 752, 756-59 (N.D. Ill. 2011) (claim by plaintiff shown in *Female Forces* television show during field sobriety test exempt from IRPA liability as matter of public concern); *Buzinski v. DoAll Co.*, 31 Ill. App. 2d 191, 195 (Ill. App. 1st 1961) (finding under common law predecessor to IRPA that claim failed where photo showing plaintiff standing next to Land Yacht mobile home appeared in *Popular Science* article about Land Yachts that was of public concern). As such, the activity that Intelius allegedly is engaging in according to the Complaint is exempt from liability under IRPA, and Siegel has pled himself out of court. Accordingly, the Complaint should be dismissed with prejudice because it fails to state a claim under IRPA, or, more specifically, because it affirmatively states allegations that expressly exempt Intelius from liability under IRPA.

**D.     CDA Section 230 bars recovery based on the allegations.**

Siegel's claims also are barred by CDA Section 230.  *See* 47 U.S.C. § 230.  According to the Seventh Circuit, "Section 230(c) of the Communications Decency Act of 1996 states, as Judge Grady had noted in the *Craigslist* case, that 'No provider or user of an interactive computer service shall be treated as the publisher or speaker of information provided by another information content provider.'" *Backpage.com, LLC v. Dart*, 807 F.3d 229, 233 (7th Cir. 2015) (citing 47 U.S.C. § 230(c)(1); *Dart v. Craigslist, Inc*., 665 F. Supp. 2d 961, 965-69 (N.D. Ill. 2009)).  As were Backpage and Craigslist, Intelius is an "intermediary . . . indifferent to the content of what it transmits." *Backpage.com*, 807 F.3d at 233-34.

For a claim to be barred by CDA Section 230, (1) the defendant must be a provider or user of an "interactive computer service," (2) the asserted claims must treat the defendant as a publisher or speaker of information, and (3) the challenged communications must be information provided by another information content provider.  *See Nieman*, 2012 U.S. Dist. LEXIS 109069 at *23; *Hadley v. Gatehouse Media Freeport Holdings, Inc.*, 2012 U.S. Dist. LEXIS 98674, *3 (N.D. Ill. July 10, 2012).  Once CDA Section 230 immunity applies, providers are immune from state law claims arising out of content originated by a third party, regardless of the theory underlying the cause of action.  47 U.S.C. § 230(e)(3); *see also Craigslist,* 665 F. Supp. 2d at 965 ("Section 230 preempts contrary state law with certain  inapplicable exceptions.").

Here, Siegel has essentially pled that Intelius is an "interactive computer service."  *See* Compl. at ¶¶ 1-4, 9-14; *see also* 47 U.S.C. § 230(f)(2) (defining an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by

libraries or educational institutions"). Siegel's claim attempts to treat Intelius as a publisher of the information set forth in the Complaint. Compl. at ¶¶ 12-14, 20-22, 34-36; *see also* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."). And the information, in light of the fact that it is publicly available, necessarily originated with another content provider. Compl. at ¶¶ 9-10, 14, 19; *see also* 47 U.S.C. § 230(c)(1).

In fact, another federal court has already found that Intelius is immune from suit under CDA Section 230. *See Obado v. Magedson*, 2014 U.S. Dist. LEXIS 104575 (D.N.J. 2014) (unpublished opinion), *aff'd by* 612 Fed. Appx. 90 (3d Cir. 2015) (unpublished opinion). Although the *Obado* district court decision and Third Circuit affirmation were unpublished and are not precedent for this Court, the opinions are persuasive in finding that the following claims by the plaintiff against Intelius were barred by CDA Section 230: defamation, slander *per se* and *per quod*, libel *per se* and *per quod*, intentional infliction of emotional distress, negligent infliction of emotional distress, violation of the New Jersey Consumer Fraud Act, punitive damages, publication of private facts, invasion of privacy, intrusion upon seclusion, false light, violation of the Age Discrimination in Employment Act, unfair and deceptive practices under state law, common law fraud, defamation conspiracy, falsity, "damage to reputation, and to emotional and mental health," and "fault-negligence and actual malice." 2014 U.S. Dist. LEXIS 104575 at *4-5. Similarly, courts have found CDA Section 230 immunity applicable to right of publicity claims. *See, e.g., Perfect 10, Inc. v. CC Bill LLC*, 488 F.3d 751, 768 (9th Cir. 2007), *amended on other grounds and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007). Accordingly, Siegel's claims should be dismissed with prejudice under CDA Section 230.

**E.     Siegel has failed to plead standing under Article III of the U.S. Constitution.**

Siegel also has not sufficiently pled a concrete and particularized injury to establish Article III standing.  In *Spokeo, Inc. v. Robin*s, the Supreme Court reaffirmed that to have Article III standing, a plaintiff must have "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely is be redressed by a favorable decision."  136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 61 (1992)).  Here, Siegel has failed to plead, and cannot satisfy, any of the elements for Article III standing.  *Id*. ("Where, as here, a case is at the pleading stage, a plaintiff must 'clearly . . . allege facts demonstrating' each element.") (citation omitted).  Accordingly, Siegel has failed to adequately plead subject matter jurisdiction and the case should be dismissed under Rule 12(b)(1).

For an injury in fact, a plaintiff must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560)); *see also Meyers v. Nicolet Rest. of De Pere, LLC,* 2016 U.S. App. LEXIS 22139, *7 (7th Cir. Dec. 13, 2016) (remanding case with instructions to dismiss when the allegations "demonstrate that [plaintiff] did not suffer any harm because of [defendant's violation].  Nor has the violation created any appreciable risk of harm.").  Here, as pled by Siegel, the alleged invasion is not "concrete" because it is "abstract."  *Id.*  And the harm is not "particularized" because the alleged harm does not actually affect Siegel in a personal or individual way.  *Id.*  Rather, Siegel has complained about availability of data on the Intelius Web site that he acknowledges is available elsewhere in the public domain.  *See* Compl. at ¶¶ 9-10, 14, 19.  He does not allege that the availability of the data via the Intelius Web site somehow harmed him in a way that the data otherwise publicly available does not harm him.

- 18 -

*See generally* Compl.  And he does not allege that any data available about him on the Intelius Web site was somehow erroneous or damaging to him in a way that caused him some form of concrete and particularized injury.  *Id.*  Nor does Siegel maintain that there is any kind of market for him to monetize this data about himself while trying to hold a monopoly on the data.  *Id.*  In fact, Siegel does not even allege that anyone ever purchased data about him via the Intelius Web site, so there may be no market for data about Siegel.  *Id.*  Additionally, Siegel does not allege that Intelius used data about him to create a false impression of sponsorship by Siegel of any product or service.  *Id*; *supra* pp. 14-15.  And Siegel has failed to plead why anyone would value his "likeness" as associated with any product or service.  *See generally* Compl.  Rather, Siegel essentially alleges that because the data was about him and despite the fact that the data was otherwise publicly available, Intelius should not be able to make money off of providing that data to other people without his consent or some form of compensation to him.  *Id.* at ¶¶ 30-40. That is not a concrete, particularized, actual or imminent injury sufficient to create Article III standing.  *See Meyers,* 2016 U.S. App. LEXIS 22139 at *9-*10 ("This case asks whether the violation of a statute, completely divorced from any potential real-world harm, is sufficient to satisfy Article III's injury-in-fact requirement. We hold that it is not."); *Gunther v. DSW Inc.,* 2016 U.S. Dist. LEXIS 152674, *22 (E.D. Wisc. Nov. 3, 2016) (granting motion to dismiss for failure to allege concrete injury); *Groshek v. Great Lakes Higher Educ. Corp*., 2016 U.S. Dist. LEXIS 144867, *1 (W.D. Wisc. Oct. 19, 2016) (same); *Groshek v. Time Warner Cable, Inc.,* 2016 U.S. Dist. LEXIS 104952, *8 (E.D. Wisc. Aug. 9, 2016) (same).

Moreover, even if Siegel had sufficiently pled injury in fact (which he has not), he has not pled injury that is fairly traceable to Intelius.  *See Spokeo*, 136 S. Ct. at 1547.  In fact, he acknowledges that his data is otherwise publicly available, so presumably any injury he alleges

by virtue of availability of that data via the Intelius Web site is no different from the injury he would allegedly suffer from availability of that data via other public sources. The harm Siegel alleges is not fairly traceable to Intelius; instead, it is fairly traceable to the public record in all of its forms throughout the universe.

Finally, even if Siegel had pled injury in fact fairly traceable to conduct of Intelius (which he has not), he has not, and cannot, plead that the alleged injury is likely to be redressed by a favorable decision because Intelius is not the only source of the data. As Siegel himself has pled, the data is publicly available from various other sources. *See* Compl. at ¶¶ 9-10, 14, 19. So if Siegel is suffering as a result of that availability, he will not stop suffering if he achieves a favorable decision against Intelius. The data will still be out there, available to all those who want to spend the time to discern it. Intelius indeed makes it easier to retrieve that data from a single source. Nevertheless, the data is in the public domain, and rightfully so because it is information of public interest protected by the First Amendment. *Supra* pp. 11-13.

For this additional reason, Siegel's complaint should be dismissed with prejudice.

**F.     Because the IRPA claim fails as a matter of law, the unjust enrichment claim fails as a matter of law.**

If an unjust enrichment claim rests on the same alleged improper conduct of another claim, then the unjust enrichment claim stands or falls with that other claim. *See, e.g., Hall v. Tune Up Corp.*, 2013 U.S. Dist. LEXIS 109935, *13-14 (N.D. Ill. Aug. 6, 2013) (Der-Yeghiayan, J.) (citing *Cleary v. Philip Morris Inc*., 656 F.3d 511, 516-17 (7th Cir. 2011)). Because the unjust enrichment claim rests on the alleged IRPA violation, the unjust enrichment claim should be dismissed with prejudice with the IRPA claim.

**G.      There is no separate cause of action for injunctive relief.**

Injunctive relief is a remedy, not a separate cause of action.  *See, e.g., Doctor's Data, Inc. v. Barrett*, 2011 U.S. Dist. LEXIS 134921, *39 (N.D. Ill. Nov. 22, 2011).  Accordingly, the separate count of injunctive relief should be dismissed (and that dismissal should be with prejudice if the IRPA and unjust enrichment claims are dismissed with prejudice, which they should be in the absence of a finding by the Court that Siegel has failed to make a *prima facie* case of personal jurisdiction over Intelius).

**H.      If Intelius prevails on this motion, the Court should award Intelius its fees.**

According to IRPA, "[t]he Court may award to the prevailing party reasonable attorney's fees, costs, and expenses related to an action under this Act."  765 ILCS 1075/55.  If Intelius prevails on this motion, it will be a prevailing party under IRPA.  Courts in similar situations have not hesitated to award a prevailing defendant a fee recovery.  *See, e.g., Love v. Mail on Sunday*, 2007 U.S. Dist. LEXIS 97061, *37 (C.D. Cal. Sept. 7, 2007) (awarding attorney's fees to prevailing right of publicity defendant); *Kirby v. Sega of America, Inc*., 144 Cal. App. 4th 47, 62 (Call. App. 2d Dist. 2006) (same).

**V.      Conclusion**

The Court should dismiss this case because Siegel has not pled and cannot make a *prima facie* showing of personal jurisdiction over Intelius in Illinois.  If, however, the Court does not resolve that issue in Intelius' favor based on the pleadings, Intelius asks that the Court dismiss this case, with prejudice, under the First Amendment, IRPA itself, and/or CDA Section 230 and/or for failure to adequately plead Article III standing and award Intelius its fees under IRPA for defending against this action.

Respectfully submitted,

INTELIUS, INC.

By:   /s/ Blaine C. Kimrey
          One of Its Attorneys

Blaine C. Kimrey, Bar No. 6279625
Bryan K. Clark, Bar No. 6296090
Andrew M. Barrios, Bar No. 6317042
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

Dated:  January 12, 2017

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2017, a copy of the foregoing was electronically filed in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.  Parties may access this filing through the court's system.


*/s/ Blaine C. Kimrey* _____